UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WILLIAM OTIS,                                             CIVIL NO. 05-489 (MJD/AJB)

          PLAINTIFF,

                                                REPORT AND RECOMMENDATION

IRELL KNUDSEN, ET AL.,

          DEFENDANTS.

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Defendant Steven Corson d/b/a Corson Law Firm's Motion to Dismiss [Docket No. 126]. The Court has also moved *sua sponte* to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute, comply with federal and local rules of civil procedure, and obey a court order. The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(b).

Based upon the file and documents contained therein the Magistrate Judge makes the following:

## FINDINGS

### Background

In his Amended and Restated Complaint filed on March 1, 2006 [Docket No. 46], Plaintiff states that Defendant Charles Knudsen orally agreed to finance Plaintiff's purchase of a house in Harmony, Minnesota, in the spring of 1996. Pursuant to that agreement, Charles Knudsen would loan Plaintiff $30,000 to purchase the house. In exchange for the loan, Plaintiff agreed to pledge the proceeds of the sale of property owned by Plaintiff in Mille Lacs County, Minnesota, in the amount of $15,000, and he also would assign to Charles Knudsen his "Land

Contract" for the sale of another property located in Polk Country, Wisconsin, valued at $18,730.

After the financing agreement was finalized, Plaintiff claims that entered into a purchase agreement with the owner of the Harmony property, Denis Yoder.[1]  A closing took place in March 1996.  At the closing, Charles Knudsen paid over the $30,000 to Mr. Yoder, and a warranty deed to the property was granted to Charles Knudsen, as the trustee of the Charles B. Knudsen Trust.  Plaintiff contends that the deed was recorded with the Fillmore County Recorder on April 2, 1996.  This deed provided additional security to Mr. Knudsen in the event that Plaintiff failed to pay off the $30,000 loan.  Upon full repayment of said loan, Mr. Knudsen would furnish a warranty deed to Plaintiff.   On July 1, 1996, Plaintiff allegedly paid off his debt to Charles Knudsen.  Charles received a check in the amount of $15,000 for the sale of the Mille Lacs property.  Plaintiff also assigned his rights as a seller in his land contract for the Polk County property to Mr. Knudsen.  Plaintiff alleges that he gave Charles Knudsen a $5,000 check to be held as a deposit to ensure that Charles would receive at least $18,730 for the sale of the Polk County property.

Despite the payments and assignments made on July 1, 1996, Charles Knudsen never provided Plaintiff with a satisfaction of judgment or warranty deed to the Harmony property.  Charles cashed both the $15,000 and $5,000 checks.

Over the next four years, Plaintiff purportedly made substantial improvements to the Harmony property in the amount of $18,700.  In 1999, Plaintiff claims that Charles Knudsen, as trustee for the Charles B. Knudsen Trust, delivered to Plaintiff a quit claim deed to the Harmony

---

[1] Plaintiff's Amended Complaint does not state whether said agreement was done orally or in writing.

2

property. That deed was never recorded.

During the time that Plaintiff lived in the Harmony house, Plaintiff alleges that he engaged in a number of disputes with his neighbors, the Berges, over the boundary of his property.

In 2001, Plaintiff moved to Iowa, and then to his current residence in Arkansas. Plaintiff rented the Harmony property to Tom Osborne, who allegedly made additional improvements to the property.

In early 2003, Defendant Philip Burkholder, Fillmore County Treasurer, sent a letter to Charles Knudsen indicating that back taxes from 1997 to 2002 were due on the Harmony property. In response, Plaintiff claims that Charles Knudsen sent a letter to Burkholder indicating that Plaintiff was the owner of the Harmony property (by way of quit claim deed), and that Burkholder should contact Plaintiff to collect the back taxes.

In 2003, Burkholder allegedly told Plaintiff to send him the deed that Charles Knudsen gave him, and that he would hold the deed until all back taxes on the property had been paid. Once all back taxes were paid, Burkholder would then have the deed filed with the Fillmore County Recorder. By December 2003, Plaintiff states that he had paid off all back taxes and fines due on the property in the amount of $6,035.21. At that time, Burkholder did not record the deed. Instead, Plaintiff contends that the deed was sent to the Corson Law Office, where it has remained. Plaintiff claims that Corson Law Offices still refuses to return the deed.

On or about June 10, 2004, Charles Knudsen, as trustee of the Charles B. Knudsen Trust granted a quitclaim deed for the Harmony property to himself, even though he had already accepted payment from Plaintiff. This deed was recorded on June 21, 2004.

On or about June 10, 2004, Charles and his wife, Irell, allegedly transferred the Harmony property by warranty deed to Harold A. Berge.  Plaintiff claims that even though the Berges were on notice of Plaintiff's ownership of the Harmony property, the warranty deed was recorded on July 15, 2004.  Upon information and belief, Plaintiff claimed that Charles Knudsen received $45,000 from the Berges for the sale of the property.  Steven Corson served as Charles Knudsen's attorney during the sale of the property to the Berges.

On or about July 15, 2004, Plaintiff claims that the Berges granted a mortgage on said property to First Southeast Bank.

On or about August 25, 2005, the Berges allegedly granted Cindy Lou Berge, by way of warranty deed, a portion of the property at issue.  The deed was recorded the next day.  Plaintiff has attempted to enter onto the Harmony property since, but had been prevented from doing so by the Berges.

Plaintiff's Amended and Restated Complaint includes claims for: quiet title, voiding the Berge's conveyance, equitable mortgage, ejectment, trespass, breach of contract by Burkholder, negligence by Burkholder, interference with Plaintiff's property rights by Corson, conversion of personal property, unjust enrichment, and slander of title.

**Procedural History**

In the most recent Amended and Restated Complaint dated March 1, 2006, the named Defendants were: (1) Irell Knudsen, individually and as a beneficiary of the estate of Charles Knudsen; (2) Daniel Knudsen, as a beneficiary of the estate of Charles Knudsen and as a successor trustee to the Charles B. Knudsen Trust; (3) Steven Corson d/b/a Corson Law Offices; (3) Phillip R. Burkholder; (4) Harold A. Berge (husband); (5) Rose M. Berge (wife); (6) Cindy

Lou Berge; and (7) First Southeast Bank, a Minnesota banking corporation.

On February 15, 2007, Chief District Judge Michael J. Davis ordered that all claims against Irell and Daniel Knudsen be dismissed without prejudice [Docket No. 94].  On March 30, 2007, Judge Davis, by Amended Order, granted Burkholder's Motion to Deposit Funds and for Dismissal [Docket No. 97].  In that order, Burkholder was instructed to deposit the sum of $7,500 with the Clerk of Court in an interest bearing account pursuant to Fed. R. Civ. P. 67.  Upon deposit of said sum, the claims against Burkholder were to be dismissed with prejudice.  On that same day, the funds were deposited and Burkholder was terminated as a defendant in this case.

Plaintiff's Motions for Summary Judgment against Steven Corson [Docket No. 86], Cindy Lou Berge, Harold A. Berge, Rose M. Berge [Docket No. 88], and First Southeast Bank [Docket No. 87] were dismissed without prejudice on January 23, 2008 [Docket No. 124].  In that same order, Judge Davis referred this case to the undersigned Magistrate Judge for disposition of any remaining claims and further proceedings.  On April 28, 2008, Defendants Corson Law Office and Steven Corson filed a Motion to Dismiss [Docket No. 126].  This motion is currently before the Court.[2]

**Rule 41(b) Dismissal**

---

[2] The Court would note that on May 6, 2005, Defendants Corson Law Offices and John Corson, by and through their attorney of record, Steven Corson, moved to dismiss Plaintiff's original complaint [Docket Nos. 10 & 15].  The Court held said motions in abeyance pending resolution of the case through mediation [Docket No. 34].  Attempts to settle this case through a mediator were unsuccessful, and on August 14, 2006, said motions were terminated as moot because Plaintiff filed a new complaint [Docket No. 46].  In that new complaint, John Corson was not a named defendant.

Fed. R. Civ. P. 41(b) states in pertinent part: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this section...operates as an adjudication on the merits." Although Rule 41(b) is restricted in its wording to situations in which a motion to dismiss is filed, it has been interpreted to include *sua sponte* dismissals as well. See Amer. Inmate Paralegal Assoc. v. Cline, 859 F.2d 59, 61 (8th Cir. 1988)(per curiam), cert. denied, 488 U.S. 996 (1988). In the case of a Rule 41(b) dismissal with prejudice, the court must consider "whether in the particular circumstances of the case the needs of the court in advancing a crowded docket and preserving respect for the integrity of its internal procedures are sufficient to justify the harsh consequences of forever denying a litigant his day in court." Wright v. Sargent, 869 F.2d 1175, 1176 (8th Cir. 1989). "The court should resort to the dismissal of an action only when there has been 'a clear record of delay or contumacious conduct by the plaintiff.' " Haley v. Kansas City Star, 761 F.2d 489, 491 (8th Cir. 1985). The most important factor to consider is "the egregiousness of the plaintiff's conduct"; a secondary factor is "the adverse effect of the plaintiff's conduct on the defendant and on the administration of justice." Wright, 869 F.2d at 1176.

In this case, the Court finds that the record clearly evidences delay by Plaintiff. Over three years have passed since the original Complaint in this case was filed on March 7, 2005 [Docket No. 1]. In that time, Plaintiff has failed to actively resolve this matter in a "just, speedy, and inexpensive" manner and follow the federal and local discovery rules. See Fed. R. Civ. P. 1. For example, two defendants have been dismissed without prejudice from this action. Claims against Defendants Irell Knudsen, individually and as a beneficiary of the estate of Charles B.

Knudsen, and Daniel Knudsen, as a beneficiary of the estate of Charles B. Knudsen and as successor trustee to the Charles B. Knudsen Trust, were dismissed without prejudice as Plaintiff's service of process of his Amended and Restated Complaint pursuant to Fed. R. Civ. P. 12(b)(5) was insufficient.  The Court stated that "Plaintiff failed to demonstrate that he either properly effected service, or that lack of service of process was due to excusable neglect." See Mem. & Order 5 [Docket No. 94].

Another example of such dilatory and careless prosecution concerns Plaintiff's own motions for summary judgment against Defendants Steven Corson d/b/a Corson Law Offices, Harold A. Berge, Rose M. Berge, Cindy Lou Berge, and First Southeast Bank.  The Court denied those motions without prejudice because Plaintiff did not file a notice of motion, affidavits, exhibits, and a proposed order as required by Local Rule 7.1(b) for the District of Minnesota. While the Court recognizes that Plaintiff has been *pro se* for most of the litigation,[3] his *pro se* status does not excuse him from complying with the Federal Rules of Civil Procedure. See, e.g. Lindstedt v. City of Granby, 238 F.3d 933, 937 (8th Cir. 2000)("A pro se litigant is bound by the litigation rules as is a lawyer...")(footnote omitted); Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 856 (8th Cir. 1996)("In general, pro se representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure.")(citations omitted).  To date, Plaintiff has yet to correct these errors and push this case forward for final resolution by the Court.

---

[3] In his response to Defendant Corson's Motion to Dismiss, Plaintiff states, "On the issue of dismissal before discovery based [wholly] on the rules of civil procedure both local and national, Plaintiff stands mute.  As he is not an attorney let the record speak for him..." See Letter dated May 27, 2008.

The Court also finds additional conduct by Plaintiff to be egregious and adverse to Defendants, the Court, and other non-parties involved in this litigation, which in turn only further delays this case. In <u>Wright v. Sargent</u>, the 8th Circuit affirmed a magistrate judge's dismissal of a complaint for failure to prosecute under Rule 41(b) because plaintiff's incredible explanations for being late for trial "attack[ed] the integrity of the court and dictate[d] that he should not be permitted to misuse the good offices that he tends to undermine with his untruthful statements." 869 F.2d at 1176-77. In this case, the also Court finds that Plaintiff has offered incredible explanations and fraudulent documents to the Court. For example, Defendant Burkholder and Plaintiff entered into a settlement agreement during mediation. <u>See</u> Mem. & Order 8. Pursuant to this agreement, Burkholder would pay Plaintiff $7,500 in exchange for a Pierringer Release executed by Plaintiff. <u>Id.</u> Burkholder's attorney drafted the Pierringer Release and submitted it to Plaintiff's former counsel, Timothy Field of Kallas & Associates, for execution. <u>Id.</u> Burkholder claimed that he never received an executed copy of the Pierringer Release and thereafter sought dismissal of the claims against him. <u>Id.</u>[4] Plaintiff argued that he did execute a Pierringer Release and produced it with his brief supporting his motion for summary judgment. <u>Id.</u> However, upon closer examination of Plaintiff's submission, the Court concluded that Plaintiff had merely attached the signature page from the settlement agreement to the end of a Pierringer Release document. <u>Id.</u> In the end, the Court dismissed all claims against Burkholder with prejudice due in part to the fact that a signed and enforceable settlement agreement did exist, but also because Plaintiff failed to truthfully demonstrate that he gave

---

[4] Plaintiff's prior counsel also indicated in an *ex parte*, court-ordered affidavit supporting its motion to withdraw as counsel that Plaintiff continually refused to sign the release even though he agreed to sign the release during the aforementioned mediation. <u>See</u> Aff. ¶¶ 7-11.

Burkholder a fully executed Pierringer Release.

     Another instance of such egregious conduct occurred when Kallas & Associates sought to establish and foreclose an attorneys' lien for legal services they rendered to Plaintiff [Docket No. 105]. On September 16, 2005, Kallas & Associates sent a letter of undertaking to Plaintiff confirming the scope of their representation, requiring that Plaintiff pay a retainer fee of $1,500, and requesting that Plaintiff sign a retainer agreement with Kallas & Associates. See Ex. A [Docket No. 108]. The retainer agreement was finalized on August 22, 2005. See Ex. B. After filing its lien with the Court, Plaintiff submitted a response in opposition with the Court [Docket No. 112]. In that response Plaintiff claimed that he hired Mr. Tom Fields, an attorney at Kallas & Associates, to serve as his attorney in the mediation, and not as an attorney for Kallas & Associates, but as an independent attorney. See Mem. 3 [Docket No. 112]. Plaintiff also claimed that Mr. Fields agreed to be charged $125 per hour and that his total bill would not exceed $5,000. This agreement was laid out in a letter to Mr. Fields. See Ex. 1 [Docket No. 113]. In their memorandum supporting the motion for the attorneys' lien, Kallas & Associates indicate that neither Mr. Fields nor any other attorney at their firm received or agree to the terms in this letter. See Mem. 5 [Docket No. 107]. Kallas & Associates suspected that Plaintiff prepared this document well after the representation was underway and in anticipation of his purported motion. Id. This suspicion was confirmed by Plaintiff's letter which requested that Mr. Fields return a copy of the letter with his initials to acknowledge the representation agreement. Upon initial review of the letter, it appeared that Mr. Fields signed said letter. During the hearing on said motion, however, Mr. Fields stated that he never signed the letter and the signature on the letter was not his own. While the Court never made any concrete findings that Plaintiff forged

9

Mr. Fields signature, such conduct is consistent with Plaintiff's past conduct. In particular, Plaintiff's false representations to the Court concerning the Pierringer Release.[5]

To further support dismissal under Rule 41(b), the Court would note that Plaintiff is also in violation of the Court's Order from May 9, 2008 [Docket No. 128]. In that Order the Court gave Plaintiff until June 9, 2008, in which to serve and file a memorandum, along with appropriate affidavits and exhibits, in response to Corson's motion to dismiss. The Court did receive a letter from Plaintiff on May 27, 2008, regarding said motion. However, Plaintiff's letter was not properly filed with the Court as instructed in the May 9, 2008, Order. As a result of Plaintiff's failure to properly file its response, Defendant Corson has been deprived of his ability to fully brief his motion and the Court has essentially been delayed in making a ruling on said motion until Plaintiff complies with the Order.

Plaintiff's conduct throughout this litigation exhibits a pattern of intentional delay. Plaintiff has failed to comply with a Court Order, as well as the federal and local discovery rules on numerous occasions. Said conduct has prejudiced Defendants in that it has adversely affected their ability to be released from the case, fully brief motions, and set forth proper defenses. These delays have also consumed significant and unnecessary amounts of time and money. The Court would also strongly note that there have been two separate instances where Plaintiff has

---

[5] In the end, this Court found that Kallas & Associates "rightfully withdrew from representation of Plaintiff on August 3, 2006, and that the reasonable value of such services rendered by Kallas & Associates to Plaintiff before withdrawal amounted to $15,754.92." See Order 2 [Docket No. 120]. Plaintiff's representation was rightfully confirmed in the retainer agreement, not Plaintiff's letter. The attorneys' lien was then ordered to be foreclosed and partially satisfied by the Court paying over to Kallas & Associates the $7,500 paid into the Court by Defendant Burkholder. Id.

made fraudulent arguments and produced falsified documents to support its claims and defenses. Such conduct is extremely egregious and clearly evidences a lack of respect for the Court and its rules and procedures. This type of conduct only further delays the progress of the litigation. Plaintiff's actions or lack thereof have also hindered the Court's ability to administer its docket efficiently, and ultimately resolve a case that has been active for more than three years.

Based upon the foregoing findings and conclusions, the Magistrate Judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that Plaintiff's complaint should be **dismissed without prejudice** pursuant to Fed. R. Civ. P. 41(b) for repeated failure to prosecute, comply with federal and local rules of civil procedure, and obey a court order.[6]

Dated:   August 28, 2008

    s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Clerk of Court before **September 8, 2008**.

---

[6] The Court would note that its recommendation for dismissal would not preclude Plaintiff from seeking relief in state court.